# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **JENNIFER C. DAUGHERTY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:06CV00074 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District |
| **SOCIAL SECURITY,** | ) | Judge |
| | ) | |
| Defendant. | ) | |

*H. Ronnie Montgomery, Montgomery Kinser Law Offices, Jonesville, Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, Michael McGaughran, Regional Chief Counsel, and Anne von Scheven, Assistant Regional Counsel, Region III, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Jennifer C. Daugherty filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C.A. §§ 401-433, 1381-1383(f) (West 2003 & Supp. 2007). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

The plaintiff originally applied for DIB and SSI on March 4, 2004, alleging disability since December 15, 2000, due to cervical spine discomfort, migraine headaches, depression, osteoporosis, arthritis, and short-term memory loss. (R. at 63, 68-70, 79.) This claim was denied on July 22, 2004, (R. at 43-45) and upon reconsideration on October 15, 2004. (R. at 49-51.)

The plaintiff requested a hearing before an administrative law judge ("ALJ") (R. at 52-53) and the hearing was held on August 29, 2005. (R. at 331-48.)

By decision dated October 11, 2005, the ALJ denied plaintiff's claim for DIB and SSI. (R. at 29-35.) On March 14, 2006, after granting a request for review, the Appeals Council remanded the case back to the ALJ for further proceedings. (R. at 59-62.)

-2-

Case 2:06-cv-00074-JPJ-PMS   Document 20   Filed 10/22/07   Page 2 of 11   Pageid#: 69

A second hearing was conducted before an ALJ on July 13, 2006. (R. at 349-73.) By decision dated July 28, 2006, the ALJ again denied the plaintiff's claim for DIB and SSI. (R. at 15-23.) On October 12, 2006, the Appeals Council denied the plaintiff's request for review. (R. at 6-8.) On December 8, 2006, the plaintiff filed a complaint with this court. The parties have filed cross motions for summary judgment, and the case is now ripe for decision.

II

The summary judgment record reveals the following facts. The plaintiff was born on September 23, 1950, and was fifty-five years old at the time of the ALJ's decision. (R. at 68, 19.) She does not have a high school diploma. (R. at 334-35.) Her past relevant work experience includes employment as a sewing machine operator. (R. at 335.)

The plaintiff's medical records reflect that she was treated by Dr. Abdul-Latief Almatari from February 8, 2002, to March 14, 2006, for a variety of aliments. (R. at 179-209, 255-71, 289-93, 299-304.)

On February 8, 2002, the plaintiff was seen by Dr. Almatari and was assessed as suffering from anxiety, depression, obesity, and postmenopausal symptoms. (R. at 206-07.) She was prescribed Xanax and Paxil. (R. at 206.) Dr. Almatari reported

that the plaintiff had improved on a follow-up visit on February 15, 2002. (R. at 203.) During this visit, the plaintiff reported that she was pleased with her improvement. (R. at 205.)

On April 18, 2002, the plaintiff returned to Dr. Almatari complaining of recurring migraine headaches. (R. at 202.) The plaintiff had previously been prescribed Zomig but had run out of it prior to the onset of her migraine headaches. (*Id.*) Dr. Almatari renewed the prescription of Zomig to treat the plaintiff's headaches. (*Id.*) He also encouraged the plaintiff to lose weight, diet, and exercise. (*Id.*)

The only times the plaintiff sought treatment from Dr. Almatari for back pain during this period was when she had over-exerted herself. (R. at 182-86, 264.) In the months leading up to the plaintiff's first complaint of low back pain, she had reported no back pain during any medical visits. (R. at 187, 193, 195.) The plaintiff first sought treatment for low back pain on September 19, 2003, after she had strained her back while cleaning an oven. (R. at 185-86.)

On October 14, 2003, the plaintiff underwent a radiograph of her lumbar spine, as ordered by Dr. Almatari. The radiograph revealed a moderate degree of chronic disc disease in most of the lower thoracic spine, moderate to marked degree of

-4-

Case 2:06-cv-00074-JPJ-PMS   Document 20   Filed 10/22/07   Page 4 of 11   Pageid#: 71

chronic disc disease at L1-L2, slight disc space narrowing, and slight scoliosis. (R. at 220.)

On October 21, 2003, Dr. Almatari reported that the plaintiff was doing much better with her back pain. (R. at 182-83.) He recommended she continue using a heating pad and massage and taking Flexeril and Motrin. (R. at 182.)

During the remaining visits to Dr. Almatari, the plaintiff was treated for a variety of aliments including, obesity, hypertension, depression, kidney stones, headaches, foot pain, diabetes, hypothyroidism, and non-radiating low back pain. (R. at 179-209, 255-71.)

Dr. Almatari's treatments notes reflect no instance where the plaintiff complained of or was treated for neck or shoulder troubles. (R. at 179-209, 255-71, 289-93, 299-304.) On the plaintiff's last visit to Dr. Almatari on March 2, 2006, she reported that she had no bowel or bladder problems. (R. at 290.)

With the exception of Vioxx,[1] the plaintiff specifically denied that she experienced side effects from medications she was prescribed. (R. at 84, 92-93, 99,

---

[1] On September 30, 2004, the maker of Vioxx voluntarily removed the drug from the market. *See* Barnaby J. Feder, *Vioxx Recall May Bring Flood of Suits to Merck*, N.Y. Times, Oct. 5, 2004, at C2.

-5-

115, 126, 279).[2]  Furthermore, on July 13, 2003, the plaintiff testified that her medications had not caused her any harmful side effects.  (R. at 345.)

On August 10, 2005, the plaintiff was seen by Robert S. Spangler, Ed.D., a consulting psychologist.  (R. at 278-87.)  Dr. Spangler's diagnostic impression was that the plaintiff suffered from mild depression, had low average intelligence, and that she possessed a Global Assessment of Functioning score of sixty-five to seventy.  (R. at 281.)

The record indicates that the plaintiff is able to perform a number of activities. The plaintiff reported that her daily activities include caring for her foster children, reading the newspaper and Bible, and working on puzzles.  (R. at 96-99, 353.)  The plaintiff has taken care of multiple foster children that have resided in her home after her alleged onset date of disability.  (R. at 340, 352-53, 362.)  She is able to care for the children during the day, without assistance, while her adult family members are working.  (R. at 353, 361-62.)  The foster children have ranged in age from two years old to twelve years old.  (R. at 352, 360.)  In addition to caring for multiple foster

---

[2] The plaintiff contends that the ALJ erred by failing to consider side effects caused by her medications.  This contention lacks any merit and will not be addressed as the record reveals that the plaintiff repeatedly and specifically denied that she experienced any side effects from her medications.

-6-

children, she is able to attend church two days a week. (R. at 359-60.) The plaintiff is also able to drive and grocery shop. (R. at 342, 359.)

In his decision dated July 28, 2006, the ALJ found that the plaintiff's obesity was a severe impairment. (R. at 21.) However, he noted that the plaintiff did not have a documented musculoskeletal impairment. (*Id.*)

III

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision, and whether the correct legal standard has been applied. 42 U.S.C.A. § 405(g). *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence exists, the final decision of the Commissioner must be affirmed. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 642. It is the role of the ALJ to resolve evidentiary conflicts, including inconsistences in the evidence. It is not the role of the court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides

a basis for the Commissioner's decision. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff first argues that the ALJ erred by failing to consider the effect the plaintiff's obesity had on her back impairment. I reject this argument. The ALJ fully considered the plaintiff's alleged back impairment and found that she did not have a documented musculoskeletal impairment. (R. at 20-21.) The ALJ fully considered the impact of the plaintiff's obesity on her ability to perform light work. Although he determined that the plaintiff's obesity qualified as a severe impairment, the records evaluated by the ALJ indicated that such a condition had only a minimal impact on her back. The medical records do not indicate any nerve root compression or stenosis. (R. at 20.) The ALJ also noted that although the plaintiff had sought treatment for mild back pain, she was not referred by her treating physician to an orthopedic specialist or a neurosurgeon for treatment or diagnostic studies. (*Id.*) The plaintiff's medical records indicate that she sought treatment for back pain from Dr. Almatari on only two occasions. On both occasions, her back pain followed some form of heavy exertion and was effectively treated by prescription medication. Accordingly, there was substantial evidence to support the ALJ's findings regarding the plaintiff's back impairment.

The plaintiff next argues that the ALJ failed to give a detailed explaination as to why he gave neither Dr. Almatari nor the state agency physicans controlling weight. Under 20 C.F.R. § 404.1527(d)(2) (2007), a treating physician's opinion is entitled to more weight than the opinion of a non-treating physician, but it is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

The ALJ discussed at length the plaintiff's medical history and a large part of this history was based on the plaintiff's visits to Dr. Almatari. Contrary to the plaintiff's assertions, the ALJ did not summarily reject the opinions of and diagnoses made by Dr. Almatari. Indeed, certain assertions made by the plaintiff regarding her condition are inconsistent with Dr. Almatari's treatment notes. The ALJ's review of the plaintiff's medical history was adequate and this history reveals substantial evidence supporting the ALJ's decision. The plaintiff also asserts that the ALJ erred by failing to give the state agency physicians controlling weight. However, the ALJ rejected the state agency physicians' findings only to the extent that they found the plaintiff would be limited in pushing and pulling with her lower extremities because

-9-

of her back. This rejection was based on objective evidence in the plaintiff's medical history as well as references to her daily activities. (R. at 21.) Accordingly, the ALJ made no error in rejecting these assessments of the state agency physicians.

Finally, the plaintiff contends that the ALJ made an erroneous credibility determination by determining that the plaintiff was not credible because she had failed to lose weight. (R. at 27.) This argument is largely without merit. The record is replete with inconsistences on the part of the plaintiff. The plaintiff's failure to lose weight, after being admonished repeatedly to do so by her doctor, was only one factor taken into account when assessing her credibility. For example, the ALJ relied heavily on the plaintiff's daily activities in determining she was not credible. (R. at 21-22.) While claiming that she is disabled, she has been able to care for numerous foster children. The ALJ noted that it would be unlikely that the state would place children in her home if she were physically unable to care for them. (R. at 22.) Furthermore, the ALJ considered the fact that the plaintiff claims disability stemming from ailments she never brought to the attention of her treating physician. There is also no other indication in the record that she ever sought treatment for such ailments from other sources. For these reasons, it was not improper for the ALJ to find that the plaintiff was not credible in her assertions.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: October 22, 2007

/s/ JAMES P. JONES
Chief United States District Judge